# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

ANDREW JOEY DELGADO,

        Petitioner,

v.                                                                    No. 17-cv-01004-KG-KRS

RAYMOND SMITH,

        Respondent.

## PROPOSED FINDINGS AND
## RECOMMENDED DISPOSITION

        Andrew Delgado, an inmate confined at the Lea County Correctional Facility in Hobbs, New Mexico, petitions for a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Following a guilty plea to vehicular homicide in 2013, the Second Judicial District Court for Bernalillo County sentenced Delgado to eighteen years in prison. Delgado's collateral attacks on his sentence failed in the state court, and he now seeks relief here. In his federal petition, Delgado challenges his conviction on due-process and ineffective-assistance-of-counsel grounds. Specifically, Delgado claims that the trial court lacked jurisdiction to impose more than six years confinement and his attorney neglected to object when the sentencing judge observed "[i]t seems like 12 years of time that's going to be mandatory on this. I don't know." (Doc. 1). Pursuant to an order of reference, *see* 28 U.S.C. § 636; (Doc. 4), the Court has reviewed the parties' submissions and the record. Having done so, the Court recommends that Delgado's petition be **DENIED**, and the matter **DISMISSED with prejudice**.

## BACKGROUND

        On November 11, 2011, Delgado fled a traffic stop and ran a red light at the intersection of San Antonio Avenue and Pan American Freeway in Albuquerque. (Doc. 9-2, at 52-53). His

1

pickup collided with another vehicle, killing the passenger, Danny O'Daniel. (*Id.*). When police removed Delgado from his truck, a bottle of Jägermeister fell out. (*Id.*). A later blood draw put his blood-alcohol level at .19. (*Id.*). Delgado had a history of diving drunk dating back to 2007, including three convictions for driving while intoxicated ("DWI") in March 2008, May 2009, and September 2010. (*Id.*, at 47-49).

A grand jury subsequently returned a seven-count indictment against Delgado charging him with vehicular homicide, among other offenses.[1] *See* N.M. Stat. Ann. § 66-8-101(C); (Doc. 9-1, at 12-16). Ultimately, Delgado pleaded guilty to that charge pursuant to a written agreement. (Doc. 9-1, at 6-12). As part of the deal, Delgado admitted his past DWI convictions and that his "sentence [was] subject to a four (4) year enhancement for each prior DWI[.]" (*Id.*). In fact, Delgado would receive an enhancement of twelve years "for habitual purposes" but would face an "exposure" of "0 (zero) to eighteen (18) years followed by probation." (*Id.*). A "potential incarceration" clause of the agreement confirmed "exposure" meant Delgado faced that range of incarceration. (*Id.*). In exchange for the plea of guilty to vehicular homicide, the prosecutor dropped the remaining counts. (*Id.*).

The trial court accepted Delgado's plea on April 17, 2013. (Doc. 9-2 at 44-89). After hearing from the surviving victim and Mr. O'Daniel's adult son, and over Delgado's requests for a continuance, the court sentenced Delgado to eighteen years in prison subject only to any goodtime he might earn. (Doc. 9-2, at 55-89). Three unsuccessful applications for post-conviction relief followed in the state courts. (Docs. 9-1; 9-2). Delgado filed instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on October 4, 2017. (Doc. 1).

---

[1] The counts are as follows: (1) vehicular homicide either by intoxication or reckless driving, *see* N.M. Stat. Ann. § 66-8-101(A) & (C); (2) DWI or aggravated DWI, *see* N.M. Stat. Ann. §§ 66-8-102, 66-8-113; (3) aggravated fleeing from police, *see* N.M. Stat. Ann. § 30-22-1.1; (4) driving with a suspended or no driver's license, *see* N.M. Stat. Ann. §§66-5-39; 66-5-2; (5) possession of an open container, *see* N.M. Stat. Ann. § 66-8-138; (6) speeding, *see* N.M. Stat. Ann. § 66-7-301; and (7) failing to use headlights at night, *see* N.M. Stat. Ann. § 66-3-802.

# STANDARD OF REVIEW

A federal court may review a state court's judgment of conviction only after an inmate has raised his specific constitutional challenges in the state courts and given them an opportunity to correct errors. *See Ellis v. Raemisch*, 872 F.3d 1064, 1076 (10th Cir. 2017) (describing exhaustion under Antiterrorism and Effective Death Penalty Act ("AEDPA") as the requirement that an inmate fairly present each challenge to the state courts and give the courts a first opportunity to correct any constitutional errors). When a state court adjudicates an inmate's constitutional claims on the merits, this Court must afford that determination great deference. *See Smith v. Aldridge*, 904 F.3d 874, 880 (10th Cir. 2018) (a federal court may grant relief only "if the state court's decision was contrary to, or an unreasonable application of, clearly established federal law" or the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented").

In this case, Delgado did not exhaust in the state courts either ground for relief contained in his federal petition.[2] And necessarily, the state court did not decide these claims on the merits.

---

[2] For exhaustion, "the crucial inquiry is whether the 'substance' of the petitioner's claim has been presented to the state courts in a manner sufficient to put the courts on notice of the federal constitutional claim." *Prendergast v. Clements*, 699 F.3d 1182, 1184 (10th Cir. 2012) (citation omitted). This rule of "fair presentation" requires more than supplying facts to the state court or citing law without facts. *Grant v. Royal*, 886 F.3d 874, 890-91 (10th Cir. 2018). Instead, the state inmate must "provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim." *Id.* at 891 (citation omitted). In any event, the "petitioner cannot assert entirely different arguments [in his or her request for habeas relief] from those raised before the state court." *Id.* (citation omitted). Even where the state claim is "somewhat similar" a state inmate does not satisfy his fair-presentation burden. *Id.* Moreover, exhaustion also means the petitioner must seek review by the state's highest court, either directly or by collateral attack. *Dever v. Kan. State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994).

In his first application for post-conviction relief in the state court, Delgado claimed ineffective assistance of counsel. The sole factual basis was the trial judge thought twelve years was mandatory and it was not. Even if this claim equates to his present ineffective assistance of counsel challenge—that counsel should have objected when the trial judge thought twelve years was mandatory incarceration time—Delgado did not seek review of the trial court's denial of his collateral challenge by the New Mexico Supreme Court. Thus, it was never exhausted. *See id.* at 1534 In his second application, Delgado claimed his due-process rights were violated because he did not understand he would receive a mandatory twelve years. The legal theory in this federal petition differs—the trial court lacked jurisdiction to sentence him to more than the basic sentence for vehicular homicide. Delgado's ineffective

Normally, this Court would be barred from reviewing Delgado's claims. The Warden, however, waived the exhaustion requirement for Delgado's due-process claim as AEDPA allows. *See* 28 U.S.C. § 2254(b)(1); (Doc. 9). As for Delgado's ineffective-assistance-of-counsel theory, the Warden asks the Court to reach the merits of the claim. The Court will do so because "[a]n application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). In light of this procedural posture, the Court employs a *de novo* standard of review. *See*, *e.g.*, *Douglas v. Workman*, 560 F.3d 1156, 1172 (10th Cir. 2009) ("When we are not bound by AEDPA deference, we review *de novo*[.]").

## DISCUSSION

Delgado asserts two grounds for federal post-conviction relief: (1) his eighteen-year sentence violates his due process rights because the trial court lacked jurisdiction to impose more than a term of six years and, in any event, could not alter Delgado's basic sentence by more than two years; and (2) his attorney was constitutionally ineffective for failing to object when the trial judge stated during the plea and sentencing proceedings that she understood twelve years of the potential eighteen-year range of confinement would be mandatory, when that term of confinement was not mandatory. Both grounds lack merit.

---

assistance challenge in the second application was factually premised on his attorney's advice, not as here, his failure to object during sentencing. Even though Delgado sought review from the New Mexico Supreme Court on this issue, it contains a different factual basis and therefore does not satisfy exhaustion requirement. In his third and final application in the state court, Delgado equated his due process claim with his attorney's ineffectiveness: because he got bad advice from his attorney, his plea was unknowing an involuntary. Delgado's stand-alone ineffective assistance claim likewise was premised on advice of counsel and failure to object to lack of notice of an enhancement. These are not the claims before this Court, and Delgado failed to exhaust as AEDPA requires.

4

## **Due Process**

Vehicular homicide carries a basic sentence of six years as a third-degree felony. *See* N.M. Stat. Ann. § 31-18-15(7) (2007). Section 68-8-101 of the New Mexico Statutes provides an enhancement of the basic sentence for vehicular homicide "by four years for each prior DWI conviction" incurred "within ten years" of the offense's commission. N.M. Stat. Ann. § 66-8-101(D) (2004). Delgado pleaded guilty to the vehicular-homicide charge and admitted three prior DWI convictions within the past ten years. (Doc. 9-1, at 6-11). As such, Delgado faced a basic sentence of six years for vehicular homicide and an enhancement of his basic sentence by three terms of four years for his prior DWI convictions. The trial court imposed an eighteen-year prison sentence, which consists of the basic sentence and the three, four-year enhancements. (Doc. 9-1, at 32). While not explicit in plea agreement and the judgment and sentence, the trial judge must have run the basic sentence and each of the enhanced sentences consecutively to arrive at a total term of eighteen years' incarceration. (*Id.* at 6-11; 33).

Delgado does not attack the sentencing scheme or deny committing the past DWIs. Instead, he claims, and there is no dispute, on the day of the plea proceedings, the prosecutor filed a "supplemental information" apprising Delgado of the potential for an enhanced sentence. Delgado insists that without providing five days' notice under N.M. Stat. Ann. § 31-18-15.1, only the six-year basic sentence for vehicular homicide may stand. Although framed as a jurisdictional challenge, construed liberally, Delgado's petition contests the sufficiency of the notice he received on due-process grounds.[3]

---

[3] The Court construes Delgado's claim in this manner because the specific statutes he cites offer no help. Generally, violation of state law does not support a federal habeas' claim and deadlines for providing notice are all matters of state law. *See Richmond v. Embry*, 122 F.3d 866, 870 (10th Cir. 1997). Even assuming a violation of a notice period contained in a statute constitutes a federal due-process violation, Section 31-18-15.1 cited by Delgado governs alteration of a basic sentence based on aggravating or mitigating factors not otherwise provided for in the vehicular-

Due process requires "reasonable notice of, and opportunity to be heard, concerning the prior convictions" that will form the basis of an enhancement for recidivism. *United States v. Martinez*, 30 F. App'x 900, 907 (10th Cir. 2002) (citing *Oyler v. Boles*, 368 U.S. 448, 452 (1962)). Even if a statute specifies a deadline, due process does not require pretrial notice so long as there is an opportunity to be heard before sentencing. *See Pittman v. Smith*, 2018 U.S. Dist. LEXIS 189429, *10-11 (D.N.M. Nov. 6, 2018), *recommendation adopted*, 2018 U.S. Dist. LEXIS 206713) (rejecting due-process claim where "the state filed supplemental criminal information seeking habitual offender enhancements after his conviction").

Here, Delgado had constitutionally adequate notice of a potential sentence increase. On December 19, 2011, the state, gave "notice to the defendant of the applicability in this cause of the penalty required by Section 66-8-101(D) . . . that a defendant upon conviction [of this offense] . . . who has incurred a prior Driving While Intoxicated conviction within ten years of the occurrence for which he is being sentenced in this case will have his basic sentence increased by two years [for each prior DWI conviction]." (Doc. 9-1). The notice misstates the precise increase—two years as opposed to four years per conviction. Delgado also says this filing has no bearing on his case. He does not, however, deny he received the document and that it provided notice of an enhanced sentence for recidivism. Further, the plea agreement signed by Delgado on April 17, 2013 and filed that same day correctly recited that Delgado's "sentence is

---

homicide statute. *See* N.M. Stat. Ann. § 31-18-15.1(A)(1); *State v. Roper,* 34 P.3d 133, 137 (N.M. App. 2001) (noting the double jeopardy concerns of using Section 31-18-15.1 together with the same aggravating circumstances found in the statute of conviction but allowing an enhanced sentence for aggravating factors identified in the offense of conviction aggravating circumstances and related but different Section 31-18-15.1 considerations). The notice period, therefore, relates not to prior DWI's that are explicitly mentioned in Section 66-8-101(D) as a basis for increasing a sentence, but separate, "aggravating circumstances" "surrounding the offense or concerning the offender." Because Section 31-18-15.1 does not apply here, Delgado's alternative argument that the trial court could sentence him only to two years above the basic sentence for vehicular homicide lacks merit. Section 31-1-15.1(G) allows the judge to alter the basic sentence for non-capital felonies based on aggravating factors, but no more than "one third of the basic sentence." As above, however, the vehicular-homicide statue permitted the enhancement the trial court utilized independent of the modification process in Section 31-18-15.1.

6

subject to a four (4) year enhancement for each prior DWI convictions [sic] [.]" (Doc. 9-1). Thus, Delgado knew about the actual possible enhancement to his sentence that could be imposed prior to pleading guilty to vehicular homicide.

Before Delgado's plea, the prosecutor presented the trial court with the supplemental information that identified Delgado's three DWI convictions along with the potential sentence increase. (Doc. 9-2, at 45-46). True, the supplemental information was formally filed after the plea and sentencing proceedings, but the trial court acknowledged the document on the record and had the prosecutor swear to its accuracy, all before accepting Delgado's plea. (*Id.*). Moreover, the trial court specifically discussed each of the prior convictions with Delgado from the supplemental information and asked whether he had committed each. Delgado responded, "Yes, ma'am" to each offense. (*Id.*, at 47-49).

The plea agreement itself provided further notice to Delgado that his sentence could be enhanced. The title —"DWI REPEAT OFFENDER PLEA AND DISPOSITION AGREEMENT"—portends recidivist effect. Delgado expressly admitted in the agreement that "he is the person convicted of the [crimes] listed in the Supplemental Information . . . and is subject to a four (4) year enhancement for each prior DWI within ten (10) years." (Doc. 9-2). Delgado also agreed the prior convictions "are valid and free from fundamental error" and to "waive[] any collateral attack on the validity of the above felony and misdemeanor convictions." (*Id.*). Thus, even if Delgado did not receive the supplemental information before pleading guilty the same convictions and penalties were set forth in the written plea deal. Contrary to Delgado's contentions, due process guarantees notice, not a specific form of notice.

During the plea hearing, the trial court observed that Delgado would be subject to twelve years' incarceration for his prior convictions. (Doc. 9-2 at 54) ("THE COURT: According to this agreement, there is a twelve-year habitual time, though, correct? MR. BENNETT: . . . .

7

According to the statute, each of the prior convictions within ten years preceding the event do allow for an enhancement of four years each"); (Doc. 9-2, at 60) ("THE COURT: . . . I think what we have in front of us is a sentence anywhere from zero to 18 years, 12 years is the habitual time just for the prior DWIs."). In short, Delgado cannot plausibly argue he lacked notice that he faced an enhanced sentence based on his DWI recidivism.

Although the trial court sentenced Delgado the same day as accepting his plea, the court took a forty-eight-minute break to allow Delgado and his attorney to prepare. To be fair, Delgado requested a continuance, but the reason for his requested continuance had nothing to do with a lack of notice related to the past DWIs; Delgado's attorney wanted to explore substance abuse issues, not contest the validity of previous convictions. Most significantly, when the proceedings reconvened, neither Delgado himself nor his attorney raised any issue as to the prior convictions despite both being afforded an opportunity to speak. Under the circumstances, Delgado had adequate notice that his DWI recidivism could and would be used again him. Delgado chose not to contest the past convictions, and nothing in the record, including Delgado's arguments here, suggests any basis for doing so. *See Pittman*, 2018 U.S. Dist. LEXIS 189429, at *11 ("[N]othing in the record indicate[s] that Petitioner challenged the . . . prior convictions").[4]

---

[4]Delgado's due-process theory continues to change. The Court has addressed Delgado's due-process claim as presented his federal petition. In his Reply, however, Delgado adds a new gloss on the notice argument. He claims he did not receive, and his lawyer did not present him with, the supplemental information. Delgado says had he received the notice, he would not have pleaded guilty. This argument does not persuade the Court, assuming it was properly raised in the first place. Even if Delgado did not receive the supplemental information, the plea agreement itself, which Delgado signed, accurately stated the recidivist effect of the prior DWI convictions and the potential for the enhancements. Additionally, the trial court discussed the past DWIs and the sentence on the record. Delgado admitted he committed each of the past DWIs on the record. Also, for the first time in the Reply, Delgado argues that the prosecutor breached the plea agreement, the prosecutor and Delgado's attorney agreed on a sentence, and Delgado did not have enough time to discuss the plea agreement with his lawyer considering the untimely filing of the supplemental information. These arguments were not presented to the state courts, exhaustion was not waived by the Warden, and the Court declines to entertain an entirely new theory in the reply. *See, e.g.*, *United States v. Archuleta*, 2017 U.S. Dist. LEXIS 99805, at *15 (D.N.M. June 28, 2017) (explaining that "district courts within the circuit have recognized the rule of waiver in habeas proceedings and applied it").

## Ineffective Assistance of Counsel

During the plea colloquy, the trial judge voiced her understanding that Delgado faced twelve years of "habitual time." Delgado maintains that his attorney should have objected at "the very first mention of habitual time" and alerted the court that twelve years was not mandatory. Counsel's failure to object, Delgado argues, amounts to constitutionally ineffective assistance in violation of the Sixth Amendment.[5] The Court rejects this contention.

To prove ineffective assistance of counsel, Delgado must demonstrate that his attorney's performance was deficient, and Delgado suffered prejudice as a result. *See Strickland v. Washington*, 466 U. S. 668, 687 (1984). In the context of sentencing and plea agreements, prejudice means the petitioner must show that the outcome of the plea process would have been different, i.e. that he would have received a more favorable sentence. *See Missouri v. Frye*, 566 U.S. 134, 148 (2012) (holding that where plea offer has lapsed or been rejected due to ineffective assistance, defendant must show the end result would have been more favorable); *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("In the context of pleas, a defendant must show the outcome of the plea process would have been different with competent advice.").

---

[5]Delgado's ineffective assistance-of-counsel claim morphs in his reply brief to include the argument that he would not have pleaded guilty and insisted on trial had his lawyer advised "you are receiving a 0-18 year plea, however, in the statute [it] states your enhancements will give you a minimum exposure of 12 years." (Doc. 10, at 6). The problem with this argument and the various glosses on the alleged bad-advice theories Delgado asserted in the state court proceedings, but not his federal petition, is Delgado's inability to show prejudice. The Tenth Circuit has held the petitioner's "mere allegation that he would have insisted on trial but for his counsel's errors, although necessary, is ultimately insufficient to entitle him to relief." *Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001) (internal quotation marks and citation omitted). "[C]ourts applying this standard will often review the strength of the prosecutor's case as the best evidence of whether a defendant in fact would have changed his plea and insisted on going to trial." *Id.* (citing *Hill v. Lockhart*, 474 U.S. 52 at 59-60 (1985)). In this case, the evidence was overwhelming, and Delgado lacked an apparent defense. It is undisputed that Mr. O'Daniel died as result of the automobile collision Delgado caused when he drove his pickup through a red light. A blood draw showed Delgado was drunk. Delgado does not challenge his past DWI convictions. Nor does he explain how he would offer a plausible challenge to the facts in this case. Despite Delgado's protestations to the contrary, when measured against the case again him, Delgado's claim he would not have pleaded guilty and insisted on going to trial is not reasonable.

As explained above, Delgado faced a basic sentence of six years with an enhancement of four years for each of his three qualifying DWI convictions. *See* N.M. Stat. Ann. §§ 66-8-101(D) (2004), 31-18-15(7) (2007). Under the vehicular-homicide statue, enhancement of a basic sentence, however, does not mean mandatory *incarceration*. In other words, the vehicular-homicide statute, Section 66-8-101(D), allows the trial court to suspend, defer, or impose a sentence so that the defendant serves all, none, or some portion of the total term in confinement. *See id.* (not requiring any mandatory period of incarceration for a third-degree felony or vehicular homicide).

The crux of Delgado's argument is that by using the term "habitual time," the judge thought she *had to incarcerate* Delgado for a minimum of twelve years.[6] "Habitual time" in New Mexico does generally refer to a sentencing enhancement whereby a defendant receives a mandatory term of incarceration for recidivism that may not be suspended or deferred. *See, e.g.*, N.M. Stat. Ann. § 31-18-17(B) ("A person convicted of a noncapital felony in this state whether within the Criminal Code [30-1-1 NMSA 1978] or the Controlled Substances Act [30-31-1 NMSA 1978] or not who has incurred two prior felony convictions that were parts of separate transactions or occurrences or conditional discharge under Section 31-20-13 NMSA 1978 is a habitual offender and his basic sentence shall be increased by four years. The sentence imposed by this subsection shall not be suspended or deferred.").

---

[6]In his Reply, Delgado also claims that an objection would have interrupted the trial judge's train of the thought and apparently distracted her from the tough stance she was taking as to the sentencing. From the Court's perspective, Delgado's implication is rank speculation. *See Strickland*, 466 U.S. at 687 (explaining that prejudice must be show by a "reasonable probability"). The record reflects a robust exchange with defense counsel and multiple interruptions during the proceedings. As explained below, the trial judge ultimately considered suspending at least some portion of Delgado's sentence and declined to do so as the plea agreement and law allowed.

10

Admittedly, the trial judge's use of the term "habitual time" to describe the enhanced sentencing scheme in Section 66-8-101(D) was not ideal.[7] While Delgado may have faced an enhanced basic sentence, any portion of it could have been suspended or deferred. If the judge did not understand her discretion in this regard, there could well be an argument that Delgado's attorney should have objected. The Court, however, is persuaded that the judge understood she could impose less than the potential maximum sentence of eighteen years that Delgado faced pursuant to his plea agreement, and instead chose to impose the sentence of eighteen years' incarceration. As a result, Delgado fails the prejudice prong of his ineffective assistance claim. *See Hale v. Gibson*, 227 F.3d 1298, 1314 (10th Cir. 2000) ("Courts may address the performance and prejudice components in any order and need not address both if a defendant fails to make a sufficient showing of one.").

For example, the plea agreement informed the trial court, the prosecutor, and Delgado that Delgado was subject to a range of sentencing. (*See* Doc. 9-2. at 40) ("If the court accepts this agreement, the defendant may be ordered to serve a period of incarceration of zero to eighteen at initial sentencing only"). To ensure the judge understood her discretion, Delgado's attorney corrected the range, handwriting in the "zero to" portion. (Doc. 9-2, at 86). During the plea hearing, the trial court made note of that range. (*See* Doc. 9-2, at 65) ("[W]hat we have in front of us is a sentence anywhere from zero to 18 years, 12 years is the habitual time just for the prior DWIs.").

---

[7]In the judgement and sentence, a preprinted form, the trial judge filled in "6" for the "Sentence" portion and circled "Habitual" as the "Enhancement Code." Under "Habitual," the trial court wrote in "12" for the "Years." (Doc. 9-1, at 32). Delgado does not challenge the form itself, but the term "habitual" is not a fully accurate statement of the enhancement framework of the vehicular homicide statute as discussed above. At the same time, because the judgement-and-sentence form was preprinted, the judge was limited in what type of enhancement she could choose: "Firearm"; "Other"; "H[ate] C[rime]"; and "Habitual." (*Id.*). Without other choices, "Habitual" most resembles the appropriate enhancement category. In any event, as discussed below, despite the choice of wording, the trial judge understood she could have suspended Delgado's sentence to a term of supervised probation and chose not to, instead opting to sentence him to confinement as permitted under the law and the plea agreement.

Moreover, despite the trial court's repeated mention of twelve years for the DWIs alone, Delgado did not raise the issue when afforded an opportunity to speak at sentencing. Delgado's silence is noteworthy because he claimed in earlier correspondence filed in state postconviction proceedings that his attorney promised him *before* the plea hearing that the twelve-year enhancement to his sentence did not mean the sentencing judge would be compelled to sentence him to twelve years' incarceration for those enhancements. (Doc. 9-1). But instead of seeking clarification during the sentencing hearing, Delgado said, "I'm taking full responsibility" and "will respectfully accept any and all consequences you put on me, Your Honor."[8] (Doc. 9-2, at 65).

Most significantly, before imposing the eighteen-year sentence, the trial court explained:

> I don't think supervision is the right thing to do in this matter. Again, based on just the sequence of facts that took place, based on the fact that this is a fourth DWI that did cost somebody his life, there is not much else I can do for you, Mr. Delgado, other than to take away your freedom, sir, just like the freedom of Mr. O'Daniel was taken away. The only difference, though, sir, is you're going to regain your freedom and he is not. I am going to sentence you to at term of 18 years. Of course, its not going to be the entire 18 years, because you are going to be given good time on a portion of that. That is just the way our system works, but it's the maximum I could sentence you.

(*Id.*). In context, supervision refers to the suspension of all or a part of a sentence to a term of supervised probation. Thus, under the totality of the circumstances, the trial judge's use of the term "12-years habitual time" was shorthand for the enhancement of the basic sentence under Section 66-8-101 for vehicular homicide with three prior DWI convictions, with each sentence being run consecutive to the other, but not representing a required period of incarceration. The trial judge understood that pursuant to the plea agreement, Delgado could be sentenced to a term

---

[8] In his reply in this Court, Delgado says he "meant . . . [he] would accept any and all punishment within the plea I accepted." (Doc. 10). This observation does not assist Delgado. The plea agreement provided for an exposure of zero to eighteen years and the trial court sentenced Delgado within that range as permitted by law and the agreement.

12

of imprisonment ranging from zero years to eighteen years, and that she could have suspended at least some of the sentence to supervised probation. As she was permitted to do by law and under the agreement, however, the trial judge determined supervised probation was not the appropriate sentence for Delgado and he should be sentenced to incarceration for the entire sentence of eighteen years. Accordingly, Delgado cannot demonstrate the necessary prejudice under *Strickland*: that he would have received a lesser prison term had his attorney objected.

## CONCLUSION

For the reasons stated above, Delgado is not entitled to habeas relief under 28 U.S.C. § 2254. Even under a *de novo* standard of review and liberal construction of his petition, the Court concludes that Delgado had constitutionally adequate notice his sentence could be increased based on his history of DWIs and that no due process violation occurred. Additionally, despite the trial court's use of the imprecise term, "habitual time," the totality of the circumstances demonstrate that the trial court understood it could suspend Delgado's eighteen-year sentence to a term of supervised probation. This understanding means Delgado cannot demonstrate he suffered prejudice from his attorney's alleged failure to object at the trial court's mention of "habitual time" despite the connotation of mandatory incarceration.

**IT IS, THEREFORE, RECOMMENDED** that Delgado's petition for a writ of habeas corpus (Doc. 1) be **DENIED** and this matter be **DISMISSED with prejudice**.

**IT IS FURTHER RECOMMENDED** that Delgado's motion for a status conference (Doc. 13) and motion to appoint counsel (Doc. 19) be **DENIED** as moot.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE

**WITHIN FOURTEEN (14) DAYS AFTER A PARTY IS SERVED WITH A COPY OF THESE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION, THAT PARTY MAY, PURSUANT TO 28 U.S.C. § 636(B)(1), FILE WRITTEN OBJECTIONS TO SUCH PROPOSED FINDINGS AND RECOMMENDED DISPOSITION. A PARTY MUST FILE ANY OBJECTIONS WITH THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO WITHIN THE FOURTEEN (14) DAY PERIOD ALLOWED IF THAT PARTY WANTS TO HAVE APPELLATE REVIEW OF THE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION. IF NO OBJECTIONS ARE FILED, NO APPELLATE REVIEW WILL BE ALLOWED. PURSUANT TO FED. R. CIV. P. 72(B)(2), A PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE OBJECTIONS.**